**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| RIAN IMMIGRANT CENTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )       C.A. No. 19-CV-11880-IT |
| KENNETH THOMAS CUCCINELLI II, | ) |
| Senior Official Performing the Duties of the | )   **ORAL ARGUMENT REQUESTED** |
| Director, U.S. Citizenship & Immigration | ) |
| Services, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

I.      This Case Is Not Moot. ............................................................................................ 5

          A.     The Voluntary Cessation Exception Applies. ........................................... 5

          B.     There Are Live Disputes Between the Parties. .......................................... 9

II.     Defendants' Motion Provides No Grounds for Dismissal of Plaintiff's APA Claim. ..... 10

          A.     Defendants' Rule 12(b)(6) Motion Is Procedurally Improper. ........................... 11

          B.     USCIS's Decision to Terminate Non-Military Deferred Action Was Not Committed to Agency Discretion Under the APA. . ........................................... 12

III.    Plaintiff Has Sufficiently Pled a Violation of Equal Protection. ..................................... 18

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Fed. Bureau of Prisons*,
  716 F. Supp. 2d 107 (D. Mass. 2010) ......................................................................7

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013)....................................................................................................5

*Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*,
  705 F.3d 44 (1st Cir. 2013)......................................................................................8

*Am. Med. Ass'n v. Reno*,
  57 F.3d 1129 (D.C. Cir. 1995)................................................................................12

*Arce v. Douglas*,
  793 F.3d 968 (9th Cir. 2015) ..................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................4, 19

*Atieh v. Riordan*,
  727 F.3d 73 (1st Cir. 2013)....................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................4

*Brown v. Colegio de Abogados de P.R.*,
  613 F.3d 44 (1st Cir. 2010)......................................................................................5

*Builders Bank v. Fed. Deposit Ins. Corp.*,
  846 F.3d 272 (7th Cir. 2017) ..................................................................................12

*Casa De Md. v. U.S. Dep't of Homeland Sec.*,
  924 F.3d 684 (4th Cir. 2019) .............................................................................14, 17

*Centro Presente v. U.S. Dep't of Homeland Sec.*,
  332 F. Supp. 3d 393 (D. Mass. 2018) .................................................................18, 19

*Church of Scientology of Cal. v. United States*,
  506 U.S. 9 (1992)......................................................................................................4

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971)................................................................................................13

*Clarke v. United States*,
  915 F.2d 699 (D.C. Cir. 1990) ........................................................................7

*Coliseum Square Ass'n v. Jackson*,
  465 F.3d 215 (5th Cir. 2006) ........................................................................7

*Conservation Law Found. v. Evans*,
  360 F.3d 21 (1st Cir. 2004) ........................................................................1, 7

*Crowley Caribbean Transportation, Inc. v. Pena*,
  37 F.3d 671 (D.C. Cir. 1994) ........................................................................16

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019) ........................................................................12

*Encino Motorcars, LLC v. Navarro*,
  136 S. Ct. 2117 (2016) ........................................................................17

*F.C.C. v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ........................................................................15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ........................................................................5

*Gulf of Me. Fisherman's All. v. Daley*,
  292 F.3d 84 (1st Cir. 2002) ........................................................................4

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ........................................................................13, 16

*Homier Distrib. Co. v. City of New Bedford*,
  188 F. Supp. 2d 33 (D. Mass. 2002) ........................................................................7

*KG Urban Enters., LLC v. Patrick*,
  969 F. Supp. 2d 52 (D. Mass. 2013) ........................................................................7, 8

*L.M.-M. v. Cuccinelli*,
  No. 19-cv-2676, 2020 WL 985376 (D.D.C. Mar. 1, 2020) ........................................................................6

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ........................................................................12

*Mangual v. Rotger-Sabat*,
  317 F.3d 45 (1st Cir. 2003) ........................................................................4, 9

*Massachusetts v. U.S. Dep't of Health & Human Servs.*,
  923 F.3d 209 (1st Cir. 2019) ........................................................................10

*Nat'l Treasury Emps. Union v. Horner*,
    854 F.2d 490 (D.C. Cir. 1988) ....................................................................14, 16

*Nat'l Wildlife Fed'n v. U.S. EPA*,
    980 F.2d 765 (D.C. Cir. 1992) ....................................................................16

*Norkunas v. HPT Cambridge, LLC*,
    969 F. Supp. 2d 184 (D. Mass. 2013) .......................................................10

*OSG Bulk Ships, Inc. v. United States*,
    132 F.3d 808 (D.C. Cir. 1998) ....................................................................17

*Powell v. McCormack*,
    395 U.S. 486 (1969) ......................................................................................5

*Reno v. American-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ................................................................................17, 20

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
    601 F.3d 1096 (10th Cir. 2010) .................................................................7, 8

*Rivera-Torres v. Rey-Hernández*,
    502 F.3d 7 (1st Cir. 2007) ............................................................................9

*Robbins v. Reagan*,
    780 F.2d 37 (D.C. Cir. 1985) ..........................................................14, 15, 16

*Roman v. Riordan*,
    2016 WL 234803 (D. Mass. Jan. 20, 2016) .............................................11

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943) ......................................................................................12

*Sossamon v. Lone Star State of Texas*,
    560 F.3d 316 (5th Cir. 2009) ........................................................................8

*Strahan v. Roughead*,
    910 F. Supp. 2d 358 (D. Mass. 2012) .........................................................9

*Town of Portsmouth v. Lewis*,
    813 F.3d 54 (1st Cir. 2016) ..........................................................................7

*Troiano v. Supervisor of Elections in Palm Beach County*,
    382 F.3d 1276 (11th Cir. 2004) ...................................................................8

*Union of Concerned Scientists v. Wheeler*,
    954 F.3d 11 (1st Cir. 2020) ........................................................................15

*United States v. Raytheon Co.*,
  334 F. Supp. 3d 519 (D. Mass. 2018) .................................................................................4

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
  429 U.S. 252 (1977)............................................................................................18, 19, 20

*Washington v. Davis*,
  426 U.S. 229 (1976)..........................................................................................................20

**Statutes**

5 U.S.C. § 706 ........................................................................................................................11

8 U.S.C. § 701(a)(2)......................................................................................................... *passim*

8 U.S.C. § 1227(d)(2) .............................................................................................................15

8 U.S.C. § 1252 ......................................................................................................................17

**Other Authorities**

8 C.F.R. § 1.3(a).....................................................................................................................15

Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under
  the Immigration and Nationality Act, 84 Fed. Reg. 63,994 (Nov. 19, 2019) ..........................6

Bill Chappell, *Chad Wolf Becomes Acting Head of Homeland Security, Names
  Ken Cuccinelli His Deputy*, NPR (Nov. 14, 2019),
  npr.org/2019/11/14/779264900/chad-wolf-becomes-homeland-securitys-
  acting-secretary-and-names-cuccinelli-as-no .........................................................................6

Federal Rule of Civil Procedure 12(b)(1) ...........................................................................1, 4, 9

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................1, 4, 11

*House Oversight and Reform Subcommittee on Civil Rights and Civil Liberties
  Holds Hearing on Deporting Critically Ill Kids and Families*, CQ
  Congressional Transcripts (Oct. 30, 2019),
  https://plus.cq.com/doc/congressionaltranscripts-5759863?0 ...........................................6, 14

**INTRODUCTION**

For years, Plaintiff Rian Immigrant Center has helped immigrant families who are obtaining life-saving medical care acquire a form of temporary lawful presence called deferred action.  On August 7, 2019, Defendant U.S. Citizenship and Immigration Services ("USCIS") terminated the authority of its field offices to grant deferred action to any person or family.  After Plaintiff's clients began receiving denial letters announcing the end of this life-saving program, the Center brought suit, arguing that the termination of deferred action was arbitrary and capricious, improperly undertaken without notice and comment, and the result of unlawful animus.  Two weeks later, Defendant Department of Homeland Security ("DHS") purportedly reinstated the authority of USCIS offices to grant deferred action.  But Defendants have avoided describing the extent of this reinstatement, and they have nowhere bound themselves to keep the program intact for any longer than it takes to make this case go away.

Defendants nevertheless argue that this action should be dismissed as moot under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, that much of Plaintiff's Administrative Procedure Act ("APA") and Equal Protection Clause claims should be dismissed for failure to state a claim under Rule 12(b)(6).  Both arguments are incorrect.

Regarding mootness, because DHS's latest policy is, at best, a voluntary cessation of the challenged conduct, Defendants have failed to meet their heavy burden to demonstrate that the case is moot.  Although Defendants argue that the voluntary-cessation doctrine does not apply—on the theory that the government's good faith is simply presumed—binding caselaw says otherwise.  *See Conservation Law Found. v. Evans*, 360 F.3d 21, 25-27 (1st Cir. 2004).  That caselaw is particularly salient here, as there is reason to believe that Defendants may explicitly rescind the policy again without warning, causing significant harms to Plaintiff's clients.  Nor is

1

this Court bound to accept on faith that the Defendants have, in fact, fully "reinstated" the "deferred action request process." Mem. at 7. As Defendants all but concede, there is a live controversy regarding whether USCIS reversed its decision in name only and whether Defendants have the authority to explicitly rescind the policy again, and at any time. *See id.* at 7-8. Thus, Defendants' mootness argument is foreclosed both by the voluntary-cessation doctrine and by Defendants' failure to establish that their challenged conduct has truly ceased.

Defendants' challenges to the merits of Plaintiff's claims similarly fail. With regard to Plaintiff's APA claim, Defendants do not argue for the dismissal of the portion of the claim challenging USCIS's failure to undertake notice and comment. Defendants instead argue that Plaintiff's "arbitrary and capricious" claim is substantively unreviewable, citing caselaw applicable to agency decisions not to prosecute specific matters. Because this case involves a significant programmatic shift eliminating a decades-old program relied on by hundreds of families experiencing severe illness—not an individual enforcement decision—it is not "committed to agency discretion by law" under 8 U.S.C. § 701(a)(2) and is reviewable. Defendants acknowledge that Plaintiff's equal-protection claim is reviewable, but claim broad discretion to engage in discriminatory immigration policy. Because Defendants' discretion is constrained by the APA and the Equal Protection Clause, and Plaintiffs have adequately pled violations of these authorities, this case should not be dismissed.

## STATEMENT OF FACTS

For decades, USCIS and its predecessor agency have used deferred action to provide relief to individuals receiving critical medical care in the United States, and their families. Compl. ¶¶ 19, 22. USCIS created standardized procedures and practices for its deferred-action program, and, in Boston, even handed out a checklist listing application requirements, including

the specific information required to be contained in a letter from a treating physician.  *Id.* ¶¶ 20-28; Khanbabai Decl. ¶ 5 & Ex. A.

On August 7, 2019, Defendants abruptly and without notice or explanation stopped consideration of deferred action for non-military requestors.  Compl. ¶ 48.  The Plaintiff, its clients, and the public did not learn about this decision when it was made.  *Id.* ¶¶ 49-52.  Instead, they learned about it after USCIS field offices began sending denial letters to deferred-action applicants stating that USCIS would no longer consider non-military deferred-action applications.  *Id.* ¶¶ 51-60.  These letters told applicants that if they did not leave the United States in 33 days, they could be placed in removal proceedings and removed from the United States.  *Id.* ¶ 56; Marino Decl., Ex. A.  Then, on September 2, 2019, USCIS announced that it would reopen and adjudicate only those deferred-action cases that were pending on August 7, 2019.  Compl. ¶ 61.  The release made clear the program had been otherwise terminated.  *Id.*

The Rian Immigrant Center is a nonprofit organization that serves Massachusetts clients who seek deferred action based on a serious medical need.  Defendants' abrupt institution of their new policy caused significant harm to the Rian Immigrant Center and endangered its clients:  among other harms, the Center immediately had to abandon other work to endeavor to save its clients' lives by opposing potential action against them.  *Id.* ¶¶ 5-6.  The Rian Immigrant Center filed this action on September 5, 2019.  It brought two claims, one alleging that Defendants' policy was an arbitrary and capricious agency action taken without requisite notice and comment as required by the APA, and the other alleging violation of the Equal Protection Clause of the Fifth Amendment.  *Id.* ¶¶ 89-100.

On September 18, 2019, two weeks after the filing of this action, DHS ordered USCIS to resume consideration of non-military deferred-action requests.  After a brief stay, Defendants have moved to dismiss.

## LEGAL STANDARD

Courts may dismiss a case under Federal Rule of Civil Procedure 12(b)(1) for a lack of subject-matter jurisdiction, including for mootness.  *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (federal courts do not have jurisdiction "to give opinions upon moot questions") (citation omitted).  A case is moot "if the court is not capable of providing any relief which will redress the alleged injury." *Gulf of Me. Fisherman's All. v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002).  "The burden of establishing mootness rests squarely on the party raising it, and [t]he burden is a heavy one." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003) (citation and internal quotation marks omitted).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  At this stage, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Consistent with this principle, "[i]n considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." *United States v. Raytheon Co.*, 334 F. Supp. 3d 519, 523 (D. Mass. 2018) (citing *Nollet v. Justices of Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000)).

## ARGUMENT

**I.      This Case Is Not Moot.**

Defendants have failed to show that the Rian Immigrant Center's claims against Defendants are moot because they have not met their burden to show that the voluntary-cessation exception does not apply or that the parties no longer have a "legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

**A.      The Voluntary Cessation Exception Applies.**

When, as here, a defendant claims that a case is moot as a result of its election to cease the challenged action, the voluntary-cessation exception to the mootness doctrine applies.  The Supreme Court has held that "voluntary cessation of a challenged practice" does not render a case moot unless "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations omitted).  The "heavy burden" of establishing this "lies with the party asserting mootness." *Id.*; *see also Brown v. Colegio de Abogados de P.R.*, 613 F.3d 44, 49 (1st Cir. 2010).

Although they claim to have voluntarily ceased the challenged practice, Defendants fail to meet their "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted).  Defendants offer only Defendant Cuccinelli's equivocal statement that he does not "expect" that he will "see any change."  Mem. at 12.  Defendants do not even contend that this statement satisfies their burden, but instead incorrectly assert that Plaintiff has the burden to demonstrate that the challenged conduct is likely to recur.  *Compare* Mem. at 10, 12, *with Friends of the Earth*, 528 U.S. at 189.

Defendants' claims of mootness are further undercut by their continued defense of the

decision to terminate deferred action.  In October 2019, Defendant Cuccinelli testified before

Congress that granting deferred action "wasn't appropriate for USCIS's mission" and declined to

say that he would preserve deferred action authority if he had the choice, or even that he would

advise a future DHS Secretary to do so.[1]  *House Oversight and Reform Subcommittee on Civil*

*Rights and Civil Liberties Holds Hearing on Deporting Critically Ill Kids and Families*, CQ

Congressional Transcripts (Oct. 30, 2019) ("Oct. 30, 2019 Transcript"),

https://plus.cq.com/doc/congressionaltranscripts-5759863?0 ("But I cannot tell you going

forward what I would advise some other secretary to do . . . or even if I were the secretary . . .

.").[2]  In the very motion in which they seek to dismiss this case as moot, Defendants assert that

they may revoke deferred-action authority at any moment, even for a discriminatory purpose,

and that this decision would be an unreviewable act of agency discretion.  Mem. at 12-18.

Meanwhile, Defendants' continued racist statements and pattern of disregarding the requirements

of administrative law in order to implement policies that harm immigrants, and Mr. Cuccinelli's

continued leadership of USCIS after his appointment was found improper, give little reassurance

that DHS will not resume its challenged conduct.[3]

---

[1] Two weeks after this testimony, Defendant Cuccinelli was promoted to second in command at
DHS after Acting Secretary McAleenan—who had instructed Cuccinelli to renew consideration
of deferred-action requests—had stepped down.  Bill Chappell, *Chad Wolf Becomes Acting Head
of Homeland Security, Names Ken Cuccinelli His Deputy*, NPR (Nov. 14, 2019),
npr.org/2019/11/14/779264900/chad-wolf-becomes-homeland-securitys-acting-secretary-and-
names-cuccinelli-as-no.

[2] Defendants submitted a cherry-picked selection of pages from this transcript.  *See* Mem., Ex. B.

[3] *See L.M.-M. v. Cuccinelli*, No. 19-cv-2676, 2020 WL 985376, at *19 (D.D.C. Mar. 1, 2020)
(finding appointment violated Federal Vacancies Reform Act).  In November 2019, without
notice and comment, Defendants implemented new rules providing for extra-statutory removals
of asylum seekers to Honduras, Guatemala, and El Salvador.  *See* Implementing Bilateral and
Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality Act, 84
Fed. Reg. 63,994 (Nov. 19, 2019).

In the face of this record, Defendants advance two arguments for why the voluntary-cessation doctrine does not apply.  Both are without merit.  First, Defendants contend that the voluntary-cessation doctrine does not apply to DHS because the government is presumed to act in good faith.  But that argument is foreclosed by First Circuit precedent applying the exception to executive agencies.  *See Conservation Law Found.*, 360 F.3d at 25-27 (voluntary-cessation exception applied to executive agencies despite subsequent use of notice and comment).  Courts in this District have therefore not hesitated to apply the voluntary-cessation exception against the government.  *KG Urban Enters., LLC v. Patrick*, 969 F. Supp. 2d 52, 59 (D. Mass. 2013) (applying doctrine against the Massachusetts Gaming Commission); *Adams v. Fed. Bureau of Prisons*, 716 F. Supp. 2d 107, 111-13 (D. Mass. 2010) (applying doctrine where defendants gave no assurance the conduct would not be repeated); *Homier Distrib. Co. v. City of New Bedford*, 188 F. Supp. 2d 33, 36-37 (D. Mass. 2002) (applying doctrine where "[t]he City has never conceded that the Ordinance violated the Commerce Clause").

Defendants cite a string of cases, none of which change this reality.  Both *Town of Portsmouth v. Lewis*, 813 F.3d 54 (1st Cir. 2016), and *Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990), concern legislative statutes.  And in *Portsmouth*, Defendants omit the First Circuit's statement that "the Supreme Court has not hesitated to invoke the voluntary cessation exception when considering the conduct of private, municipal, *and administrative* defendants." *Portsmouth*, 813 F.3d at 59 (emphasis added).  In *Clarke*, the court declined to decide whether the doctrine could even be applied to Congress.  *Clarke*, 915 F.2d at 705 ("We need not decide the issue" because the challenged action expired "of its own terms[.]").[4]

---

[4] Defendants' other authorities are similarly unpersuasive: *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 246 (5th Cir. 2006), was decided on the basis of the law of the case, with no mention of voluntary cessation; in *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601

Second, although the voluntary-cessation exception does not apply where the cessation occurs "because of reasons unrelated to the litigation"—such as the expiration of a contract according to its own terms—Defendants' mere claim to have reversed their policy for reasons outside the litigation does not suffice.  *See Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (citation omitted).  Far from meeting their heavy burden on matters of mootness, Defendants cryptically contend that they reversed their policy "for governmental reasons."  Mem. at 11.  They also note that there was "substantial congressional scrutiny . . . and requests for documents and more testimony."  *Id.*  Defendants do not connect these events to its decision to reverse its policy.  Instead, they simply assert that the reversal happening within two weeks of the present suit being filed was "merely 'correlation' not 'causation,'" while providing no further information about the reasons for the purported reversal.  *Id.* (citation omitted).  But regardless, as courts in this District have held, "[t]he existence of an independent reason . . . is insufficient to demonstrate that the decision . . . was unrelated to the litigation" because otherwise "a defendant could defeat the voluntary cessation exception and evade judicial review merely by advancing a credible cover story."  *KG Urban*, 969 F. Supp. 2d at 57 (citation and internal quotation marks omitted).  Because the voluntary-cessation exception applies here, the case is not moot.

---

F.3d 1096, 1116 (10th Cir. 2010), the Tenth Circuit explicitly declined to "opine here on what explicit measure—*if any*—of greater solicitude is due administrative agencies in the application of the voluntary-cessation exception," *id.* at 1116 n.15 (emphasis added); and *Troiano v. Supervisor of Elections in Palm Beach County*, 382 F.3d 1276, 1285 (11th Cir. 2004), relied heavily on the fact that the official in question had "professed" that the challenged conduct would not recur and, "equally important to our analysis," she had implemented the requested relief "even prior to the beginning of the litigation."  And even in *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), the Fifth Circuit relied on an affidavit from "the party responsible for enforcing administrative directives" that the challenged policy would not revert.

**B.      There Are Live Disputes Between the Parties.**

Even if the voluntary-cessation exception did not apply, this action would not be moot

because there are still live disputes between the parties.  The Rian Immigrant Center, in its

Complaint, asked the Court to declare the Defendants' actions in terminating deferred action

illegal and to vacate and set aside *any action* taken to effect the termination of deferred action.

Defendants have not met their "heavy burden" to demonstrate that the Court will be unable to

provide any relief in this case, *Mangual*, 317 F.3d at 60, where they do not actually establish that

they have restored their deferred-action program as it previously existed.  Defendants have

affirmed that they now employ the same *procedures* existing prior to August 7, 2020, Mem., Ex.

A, but have not affirmed that they are employing the same *standard*.

And a troubling record of denials thus far[5] suggests that Defendants may have reinstated

deferred action in name only.  Discovery could reveal additional facts that would present

significant reason to doubt whether deferred action has been meaningfully restored, further

confirming that the matter is not moot.[6]  Defendants' action here—scrapping a formal policy of

rejecting all requests for non-military deferred action, while apparently instituting much the same

---

[5] *See* Ex. A, April 17, 2020 Decl. of Audrey L. Allen, Esq.

[6] When a defendant seeks dismissal under Rule 12(b)(1) "where the jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should . . . grant the motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Strahan v. Roughead*, 910 F. Supp. 2d 358, 364 (D. Mass. 2012) (citation and internal quotation marks omitted).  "Moreover, as with a motion for summary judgment, plaintiff is entitled to additional discovery if he can show: '(i) good cause for his inability to have discovered or marshalled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to defeat the pending' motion." *Id.* (quoting *Rivera-Torres v. Rey-Hernández*, 502 F.3d 7, 10 (1st Cir. 2007)).  As set forth above, Plaintiff reasonably believes that Defendants have only pretextually rescinded their illegitimate policy and reasonably believes that discovery would support this fact.

substance with less fanfare—does not resolve the dispute in this action.

Moreover, Defendants maintain that they possess unfettered authority to reinstate the challenged policy even under the conditions they formerly instituted it:  Defendants claim that the policy is immune from review under the APA (though it is not), Mem. at 12-16, and, remarkably, that they are entitled to discriminate on constitutionally protected bases at a whim because they operate in the immigration context (though they are not), *id.* at 17-18.  Plaintiff seeks declarations that Defendants' actions were without force of law and an injunction preventing them from reinstating the policy again.  Defendants, who only reversed the policy in response to significant public opposition, argue in response that their actions were perfectly acceptable, thereby confirming that the parties still dispute a great deal in the present action.

Because there remain several live controversies, and because Defendants have failed to bear their heavy burden of showing that the voluntary-cessation exception to the mootness doctrine does not apply, Plaintiff's claims are not moot.[7]

## II.     Defendants' Motion Provides No Grounds for Dismissal of Plaintiff's APA Claim.

Defendants make no argument for the dismissal of the notice-and-comment aspect of Plaintiff's APA claim.  And with regard to arbitrariness and capriciousness, Defendants

---

[7] Defendants assert in a heading that "Plaintiff's Claims Are Moot and Plaintiff Lacks Standing to Seek Prospective Injunctive Relief," presumably (but not explicitly) arguing that Plaintiff does not suffer any present harm and would not have standing to bring an action forestalling any future harm.  Mem. at 6.  However, a defendant's actions after the start of litigation cannot retroactively eliminate a plaintiff's jurisdictional standing.  *See Norkunas v. HPT Cambridge, LLC*, 969 F. Supp. 2d 184, 192 (D. Mass. 2013) ("Standing in the jurisdictional sense is based on the facts as they existed at the time the complaint was filed." (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 15 (1st Cir. 2004))).  Through the loss of fees, diversion of its resources, and frustration of its mission, Compl. ¶¶ 30-47, 67-79; Marino Decl. ¶¶ 49-73, Plaintiff has amply demonstrated its standing.  *See Massachusetts v. U.S. Dep't of Health & Human Servs.*, 923 F.3d 209, 222 (1st Cir. 2019) ("[A] relatively small economic loss—even an identifiable trifle—is enough to confer standing." (citation and internal quotation marks omitted)).

improperly seek to have the claim dismissed without an administrative record, and incorrectly

argue that the decision to terminate deferred action was "committed to agency discretion by

law." 5 U.S.C. § 701(a)(2).

> ### A.     Defendants' Rule 12(b)(6) Motion Is Procedurally Improper.

Defendants' motion to dismiss the "arbitrary and capricious" portion of Plaintiff's APA

claim is procedurally improper and should be denied on that basis alone. Among other failings,

it seeks determination in an APA case without production of an administrative record.

Defendants seek to dismiss Plaintiff's APA claim, but they do so without producing an

administrative record. "A court's review of an agency decision pursuant to the Administrative

Procedure Act involves neither discovery nor trial and accordingly, is generally limited to the

administrative record." *Roman v. Riordan*, 2016 WL 234803, at *2 (D. Mass. Jan. 20, 2016)

(internal citation and quotation marks omitted) (quoting *Atieh v. Riordan*, 727 F.3d 73, 76 (1st

Cir. 2013)). This principle is in keeping with the APA's review provision, which mandates that

"[t]he reviewing court shall . . . review the whole record or those parts of it cited by a party." 5

U.S.C. § 706. Accordingly, the First Circuit has held that Rule 12(b)(6)'s plausibility standard

"is a screening mechanism designed to weed out cases that do not warrant either discovery or

trial" and "has no place in APA review" because "[t]he focal point of APA review is the existing

administrative record." *Atieh*, 727 F.3d at 76. In other words, in order to assess the merits of an

APA claim, "[t]he relevant inquiry is—and must remain—not whether the facts set forth in a

complaint state a plausible claim but, rather, whether the administrative record sufficiently

supports the agency's decision." *Id.* Without an administrative record, the Court has no basis on

which to evaluate the propriety of the agency's action under the APA.

Effectively ignoring this established body of law, Defendants seek disposition of the

APA count here without producing *any* administrative record. As a result, this Court does not

have the record before it that is necessary to "evaluat[e] the agency's contemporaneous explanation in light of the existing administrative record."  *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019).  That is fatal to Defendants' motion, because "in order to permit meaningful judicial review, an agency must disclose the basis of its action."  *Id.* (citation and internal quotation marks omitted); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.").

### B.   USCIS's Decision to Terminate Non-Military Deferred Action Was Not Committed to Agency Discretion Under the APA.

Plaintiff's APA claim challenges USCIS's abrupt termination of its program to consider non-military deferred action as arbitrary and capricious and in violation of the APA's notice-and-comment requirement.  Compl. ¶¶ 48-61.  While raising no argument against the notice-and-comment claim,[8] Defendants argue that the arbitrary-and-capricious claim is substantively unreviewable because DHS's action was "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2), and because the INA has given the agency authority to make unfettered "discretionary determinations."  Mem. at 12-16.  Defendants' arguments are without merit.

The APA forecloses judicial review under its procedures only to the extent that "agency action is committed to agency discretion by law."[9]  5 U.S.C. § 701(a)(2).  This "is a very narrow exception" that comes into play only "in those rare instances where statutes are drawn in such

---

[8] *See Am. Med. Ass'n v. Reno*, 57 F.3d 1129, 1134 (D.C. Cir. 1995) ("[U]nder the APA the ultimate availability of substantive judicial review is *distinct* from the question of whether the basic rulemaking strictures of notice and comment and reasoned explanation apply.") (citing *Lincoln v. Vigil*, 508 U.S. 182, 195 (1993)).

[9] Although Defendants characterize this limitation on review as jurisdictional, *see* Mem. at 12, it is not, *see Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272, 274-75 (7th Cir. 2017).

broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (citation and internal quotation marks omitted). Acknowledging this, Defendants rely heavily on *Heckler v. Chaney*, 470 U.S. 821 (1985), to argue that Plaintiff's APA claim is barred. *See* Mem. at 12-13. According to Defendants, their decision to rescind non-military deferred action is analogous to an agency's decision not to take a requested prosecutorial action, which was found presumptively unreviewable in *Chaney*. *Id.* at 13-14.

Defendants' reliance on *Chaney* is misguided. In *Chaney*, a group of death row prisoners petitioned the FDA to prevent the use of certain drugs in lethal injections that the agency had not approved for that purpose. *See Chaney*, 470 U.S. at 823-24. The agency refused to act and the prisoners filed suit, seeking an order directing the agency to act. *Id.* at 824-25. Applying Section 701(a)(2), the Court held that the agency's discretionary decision not to enforce the substantive law was unreviewable under the APA. *Id.* at 828, 837-38. The Court explained that such nonenforcement decisions "often involve[] a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Id.* at 831. Of particular note, the Court observed that nonenforcement decisions generally do not involve the exercise of "*coercive power* over an individual's liberty or property rights," and thus do "not infringe upon areas that courts often are called upon to protect." *Id.* at 832. As a result, the Court concluded that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." *Id.*

Defendants' affirmative termination of a longstanding non-military deferment policy bears no resemblance to the FDA's decision not to regulate something it had not regulated before. The termination of non-military deferred action is decidedly not equivalent to a decision

to decline to prosecute a specific immigration matter; in fact, Defendant Cuccinelli has emphasized that the availability of deferred action is entirely *distinct* from a decision whether to decline to place an individual in removal proceedings.  Oct. 30, 2019 Transcript, https://plus.cq.com/doc/congressionaltranscripts-5759863?0 (Cuccinelli noting deferred action denials used "pretty standard language" that action "may" be taken, "and at the end of that time period, adjudicating officers would then revisit the case about issuing an NTA or not"); *id.* (Cuccinelli stating of deferred action applicants that "[n]one were threatened with deportation"); *id.* (Cuccinelli stating, "We didn't decide to deport anyone").  Rather, by terminating non-military deferred action, Defendants have arbitrarily and capriciously ended a decades-long program that enabled certain individuals confronting serious medical needs to gain lawful presence in the United States.[10]  *See* Compl. ¶¶ 19-20.

These "[m]ajor agency policy decisions are 'quite different from day-to-day agency []enforcement decisions,'" and therefore do not implicate the reasons for not reviewing prosecutorial decisions.  *Casa De Md. v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 699 (4th Cir. 2019) (quoting *Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 496 (D.C. Cir. 1988)).  Plaintiff's challenge does not involve the agency's decisions about whether to allocate resources to individual prosecutions, and it *does* involve the rights and expectations of noncitizens relying on a decades-old program.  *See* Compl. ¶¶ 48-57; *see also Robbins v. Reagan*, 780 F.2d 37, 47 (D.C. Cir. 1985) (noting "rescissions of commitments . . . exert much more direct influence on the individuals or entities to whom the repudiated commitments were made").  While Defendants

---

[10] Although Defendants assert that "like a decision to adopt a nonenforcement policy, an agency's decision not to retain a prior practice of nonenforcement is akin to changes of criminal prosecutorial discretion policies," Mem. at 15 n.7, Defendants cite no authority at all for this non-trivial claim.

correctly observe that their discretionary decisions not to enforce a violation in any *individual* case may be unreviewable under Section 701(a)(2), this observation does not extend to sweeping policy changes that are grounded in an agency's mistaken belief that it has unfettered discretion under law.  *See* Mem. at 1-2, 15-16.

"The question of whether there exists law to apply focuses on the particular allegations of the plaintiff."  *Robbins*, 780 F.2d at 47.  As Plaintiff alleges, deferred action is governed by internal agency procedures and acknowledged in statutes and regulations, and is an established means of granting a noncitizen lawful presence, a measure of protection from removal, and eligibility to work.  *See* Compl. ¶¶ 19-29; 8 C.F.R. § 1.3(a) (deferred action recipients lawfully present for purposes of social security); *id.* § 274a.12 (deferred action recipients eligible for work authorization); see also 8 U.S.C. § 1227(d)(2).  Plaintiff alleges that Defendants changed a course they had followed for decades, silently and without any reasoned explanation, *see F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("[O]f course the agency must show that there are good reasons for the new policy."), and with improper motives, senselessly leaving families facing serious illnesses to fear for their lives while falsely affirming that deferred action could be obtained from ICE.  Compl. ¶¶ 48-60.  This agency action is reviewable to ensure "a limited degree of fidelity to the agency's own [prior] decision"; it is not agency action "of a kind that the courts inherently can play no legitimate role in reviewing it," or "judicial review of agency non-action [that] would necessitate a focusless evaluation of agency policy and priorities."[11]  *Robbins*, 780 F.2d at 45, 47.

---

[11] In *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 21 (1st Cir. 2020), the First Circuit raised but did not answer the question whether 5 U.S.C. § 701(a)(2) permitted review of a "pure APA" claim not alleging a violation of a separate substantive statute.  *Id.* at 22.  But the prohibition on "arbitrary and capricious" government conduct would be all but meaningless if such conduct were reviewable only where an agency were also impermissibly applying its

The D.C. Circuit's decision in *Crowley Caribbean Transportation, Inc. v. Pena*, 37 F.3d 671 (D.C. Cir. 1994), is instructive.  There, the D.C. Circuit noted that *Chaney*'s presumption of unreviewability does not apply to "an agency's statement of a *general enforcement policy* [which] may be reviewable for legal sufficiency."  *Id.* at 676.  The court found "ample reasons" for distinguishing an agency's refusal to act on a single complaint from "an agency's statement of a general enforcement policy."  *Id.* at 676-77.  One key distinction was that general statements of policy are distinguishable from the "mingled" facts and law that "drive an individual enforcement decision"; "an agency's pronouncement of a broad policy against enforcement poses special risks that it 'has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities.'"  *Id.* at 677 (quoting *Chaney*, 470 U.S. at 833 n.4).  Just as in *Crowley*, USCIS's decision here was not based on the individual facts of a particular case or any other matter that is peculiarly within the agency's area of expertise; instead, Defendant Cuccinelli has testified that it was based on his assessment that "philosophically it is appropriate or more appropriate for this authority to rest with the prosecutorial element of the Department of Homeland Security."  Mem., Ex. B at 31.

Such major policy decisions are "quite different from day-to-day agency []enforcement decisions."  *Nat'l Treasury Emps. Union*, 854 F.2d at 496.  Accordingly, an agency's expression of a broad or general policy based on its legal interpretation of a statute or its authority is subject to review.  *Nat'l Wildlife Fed'n v. U.S. EPA*, 980 F.2d 765, 767, 773 (D.C. Cir. 1992) (holding

---

authority under provisions of another statute.  The question is not whether a separate statute or source of law provides applicable standards—though such standards are present in this case—but whether the "particular allegations of the plaintiff" can be meaningfully reviewed.  *See Robbins*, 780 F.2d at 45 ("Once an agency has declared that a given course is the most effective way of implementing the statutory scheme, the courts are entitled to closely examine agency action that departs from this stated policy." (internal footnote omitted)).

*Chaney*'s presumption "is inapplicable or at least rebutted" where a plaintiff "raises a facial challenge to the [agency's] statutory interpretation embodied in [a regulation] and does not contest a particular enforcement decision").  Such is the case here.

Unlike in cases where courts have found an agency's action to be committed to agency discretion, USCIS here did not exercise its discretion in an individual case, nor did it "identify a violation of the INA against which to act, determine whether government resources would be best spent enforcing one violation over another, or decide whether the Department would succeed if it pursued a particular violation," in deciding to rescind the non-military deferral policy.  *Casa De Md.*, 924 F.3d at 699.  USCIS's Acting Secretary's decision to rescind non-military deferred action is not a *Chaney*-type "single-shot non-enforcement decision."  *OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808, 812 (D.C. Cir. 1998) (holding that while "agencies' nonenforcement decisions are generally unreviewable . . . , an agency's adoption of a general enforcement policy is subject to review").  It is, instead, an unexplained (and improperly executed) policy change.[12]

Because the Supreme Court has made clear that an "[u]nexplained inconsistency in agency policy" can be "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice," Defendants' actions must be reviewed.  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (citation and internal quotation marks omitted).

---

[12] For similar reasons, Defendants' suggestion that the INA would "insulate executive decision-making in the area of immigration from judicial review" is unsupported.  Mem. at 15.  8 U.S.C. § 1252 only exempts very specific agency actions from judicial review, and policy decisions are not among them.  *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*") (Section 1252(g) applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'").

**III.      Plaintiff Has Sufficiently Pled a Violation of Equal Protection.**

        The Rian Immigrant Center has stated a claim under the Equal Protection Clause under the applicable legal standards.  The standard Defendants raise for such claims informs individual selective-enforcement challenges, and does not apply in this context, because Plaintiff challenges the revocation of a program that allowed certain individuals to obtain lawful presence, not the removal of any individuals or any individual adjudication.  Further, Defendants' arguments that they are entitled to discriminate as a matter of course in enforcing immigration law have no basis in the law or the Constitution.  *See* Mem. at 16-20.

        Defendants point to Plaintiff's failure to allege that "similarly situated individuals were treated differently," *see* Mem. at 16-17, but this standard has no place when a government action of broad applicability, rather than an individual enforcement action, is at issue.  Under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), a plaintiff need only plausibly allege that a facially neutral policy change has been made with a discriminatory motive in order to plead a violation of the Equal Protection Clause.  *See id.* at 267; *see also Centro Presente v. U.S. Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 414 (D. Mass. 2018) (citing factors in *Arlington Heights* as the standard for determining whether the complaint sufficiently alleges a violation of the Equal Protection Clause based on a discriminatory purpose being a motivating factor in a policy change).  Contrary to Defendants' arguments, Plaintiff is not pleading a selective-prosecution claim, and its allegations are more than sufficient to support its claim under the *Arlington Heights* standard.

        Plaintiff has alleged facts to establish that USCIS's termination of its deferred-action program was motivated by animus.  *See* Compl. ¶¶ 19-29, 48-61, 80-88.  Recognizing that evidence of discriminatory motive is often circumstantial, the Supreme Court required courts considering whether a facially neutral policy is motivated by impermissible animus to look to:

(1) the "historical background of the decision;" (2) the "specific sequence of events leading up to the challenged decision;" (3) "[d]epartures from the normal procedural sequence;" (4) "substantive departures . . . , particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached;" and (5) "contemporary statements by members of the decisionmaking body."  429 U.S. at 267-68.  At the pleading stage, Plaintiff need only supply "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"—that is, "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

Here, Plaintiff has alleged facts plausibly demonstrating that Defendants Trump and Cuccinelli harbor animus against non-white immigrants and those with disabilities, and have revamped immigration policy—including terminating the authority to grant deferred action—as a result of this animus.  *See* Compl. ¶¶ 80-88.  Even at this early juncture, Plaintiff has addressed the historical background of the policy, alleging that a series of immigration policies initiated by the Trump administration have demonstrated such animus.  *See, e.g.*, *id.* ¶¶ 80-88.  To the extent possible without an administrative record, Plaintiff has detailed the events leading up to and surrounding the rescission of non-military deferred action.  *See id.* ¶¶ 48-61.  And Plaintiff has included in its Complaint a (partial) litany of contemporary statements both by Defendant Cuccinelli and other members of the Trump administration.[13]  *See, e.g.*, *id.* ¶¶ 4, 82-88.  Taking

---

[13] Defendants contend that the specific actions set forth in the Complaint are removed from the decision to end deferred action, and that Defendant Trump's statements have no direct relevance.  *See* Mem. at 19.  But the Complaint provides enough facts to indicate that the Trump administration's immigration policies, on the whole, stem from discriminatory motives, *see, e.g.*, Compl. ¶¶ 4, 80-88, and relevant historical background can include "any indication" of a discriminatory purpose, including "statements of animus [made] by people plausibly alleged to be involved in the decision-making process," and the "unreasoned shift in policy."  *Centro*

all facts in the Complaint as true, as this Court must, the Complaint clearly alleges that immigrants from non-European countries, particularly those with disabilities, have been disproportionately targeted and affected by a policy change motivated by animus based on race, national origin, and disability. *See Washington v. Davis*, 426 U.S. 229, 242 (1976) ("[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts[.]").

Finally, Defendants contend that Plaintiff needs to show that "similarly situated individuals were treated differently," and contend that Plaintiff makes a "selective prosecution" claim that is barred by the Supreme Court's decision in *AADC*. See Mem. at 16-17. Neither is correct. Plaintiff challenges the policy that made non-military deferred action unavailable, not any selective-enforcement decision. And *AADC* did not create a general rule barring equal-protection challenges in the immigration context. It held only that noncitizens will not ordinarily be spared from removal and permitted to continue living unlawfully in the United States on the grounds that they have been targeted for discriminatory reasons. *AADC*, 525 U.S. at 489-90. *AADC* has no application to Plaintiff's challenge to the rescission of a program that permits its beneficiaries to live in the United States lawfully. Because the Complaint plausibly alleges that this rescission was motivated by animus, Plaintiff states an equal-protection claim.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss should be denied.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Plaintiff believes that oral argument will aid the Court in the resolution of this Motion.

Accordingly, pursuant to L.R. 7.1(d), Plaintiff respectfully requests that oral argument be heard.

---

*Presente*, 332 F. Supp. 3d at 415; *see also Arce v. Douglas*, 793 F.3d 968, 977–78 (9th Cir. 2015) (stating that under *Arlington Heights*, "very little such evidence" is required because "any indication of discriminatory motive" may raise a question appropriate for the fact-finder).

Respectfully submitted,

RIAN IMMIGRANT CENTER,

By its attorneys,


/s/  Ira J. Levy
Ira J. Levy (*Pro hac vice*)
Goodwin Procter LLP
The New York Times Building
620 Eight Avenue
New York, NY 10018
Tel.:  212.813.8800
ILevy@goodwinlaw.com

Robert D. Carroll (BBO 662736)
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
RCarroll@goodwinlaw.com

Rachel M. Walsh (*Pro hac vice*)
Goodwin Procter LLP
Three Embarcadero Center, 28th Floor
San Francisco, California  94111
Tel.: 415.733.6128
rwalsh@goodwinlaw.com

Matthew R. Segal (BBO 654489)
Adriana Lafaille (BBO 680210)
American Civil Liberties Union
Foundation of Massachusetts, Inc.
211 Congress Street
Boston, MA 02110
Tel.:  617.482.3170
msegal@aclum.org
alafaille@aclum.org

Oren Nimni (BBO 691821)
Lawyers for Civil Rights
61 Batterymarch Street
Boston, MA 02110
Tel.: 617.988.0606
onimni@lawyersforcivilrights.org

Anthony M. Marino (BBO 680237)
Rian Immigrant Center
1 State Street, Suite 800
Boston, MA 02109
Tel.: 617.542.7654
amarino@riancenter.org

*Attorneys for Plaintiff the Rian Immigrant
Center*

Dated:   April 23, 2020

21

## <u>CERTIFICATE OF SERVICE</u>

I, Ira J. Levy, hereby certify that a copy of this Opposition to Motion to Dismiss was served on all counsel of record through the CM/ECF filing system on April 23, 2020.

<u>/s/ Ira J. Levy</u>

Ira J. Levy