UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RIAN IMMIGRANT CENTER, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 1:19-cv-11880-IT |
| KENNETH THOMAS CUCCINELLI II, Acting Director, U.S. Citizenship & Immigration Services, et al., | * |
| Defendants. | * |

MEMORANDUM & ORDER

November 2, 2020

I. Introduction

Plaintiff Rian Immigrant Center ("Rian") (formerly, the Irish Immigrant Center, Inc.), a non-profit organization that provides legal and other services to immigrants and refugees, brought this action challenging "the Trump Administration's abrupt termination of a longstanding government program that protects seriously ill people from deportation and death." Complaint ¶¶ 1, 11, 48 [#1]. The program allegedly "allow[ed] immigrant families battling serious illnesses to request immigration relief in the form of 'deferred action.'" Id. ¶ 2. Rian represents individuals and families in nineteen cases seeking either a grant or renewal of deferred action. Id. ¶¶ 5, 45-47. Rian alleges that the termination of the program was arbitrary, capricious, not in accordance with the law, without observance of notice and comment procedure, and discriminatory, in violation of the Administrative Procedure Act ("APA") and motivated by animus based on race, national origin, and disability in violation of the Equal Protection clause of the Fifth Amendment. Id. ¶¶ 89–100.

1

Pending before the court is a Motion to Dismiss [#20] submitted by Defendants Kenneth Thomas Cuccinelli II, Acting Director of United States Customs and Immigration Services ("USCIS"), Lori Pietropaolo, USCIS Regional Director for the Northeast Region, Michael J. McCleary, Director of the USCIS Boston Field Office, Kevin McAleenan, Acting Secretary of the Department of Homeland Security ("DHS"), President Donald J. Trump, USCIS, and DHS seeking dismissal of the action on various grounds. The court, having granted the parties' Consent Motion to Bifurcate Disposition of Defendants' Motion to Dismiss [#36], see Elec. Ord. [#37], addresses here only Defendants' argument that the case is moot. For the reasons that follow, the Motion to Dismiss [#20] is DENIED insofar as it contends that this action should be dismissed for mootness.

II. Background

    A. Facts as Alleged in the Complaint

Deferred action is an administrative act "which gives some [immigration removal] cases lower priority," Complaint ¶ 19 [#1] (citing 8 C.F.R. § 274a.12(c)(14)), and is used to "provide relief to individuals whose cases raise compelling humanitarian concerns[1] and to individuals whose removal is not in the best interests of the U.S. government." Id. (citing Citizenship & Immigration Servs. Ombudsman, Dep't of Homeland Sec., Deferred Action: Recommendations to Improve Transparency and Consistency in the USCIS Process 1-2 (July 11, 2011), https://www.dhs.gov/xlibrary/assets/cisomb-combined-dar.pdf).

Requests for deferred action are governed by USCIS's 2012 "Standard Operating Procedures for Handling Deferred Action Requests at USCIS Field Offices," which apply to "all

---

[1] Rian specifically "represents individuals and families applying for deferred action from USCIS as a result of a serious medical need." Complaint ¶ 35 [#1].

requests for deferred action . . . handled at USCIS Field Offices." Id. ¶ 23. USCIS conducts background checks and takes fingerprints for deferred action applicants. Id. ¶ 26. Since USCIS was created in 2003, it has used its authority to grant deferred action, and, prior to its existence, its predecessor, the Immigration and Naturalization Service ("INS") also granted deferred action. Id. ¶¶ 19-20, 22.

USCIS does not grant deferred action to applicants who are already in removal proceedings or against whom a final order of removal has issued. Id. ¶ 28. Recipients of deferred action do not receive lawful immigration status and are still potentially subject to removal, but the designation as a low removal priority, which usually lasts for a period of two years, provides some stability and protection. Id. ¶ 21. Recipients are also eligible to apply for work authorization under 8 C.F.R. § 274a.12(c)(14), do not accrue unlawful presence under 8 U.S.C. § 1182(a)(9)(B)(i) (which could otherwise preclude their receipt of various immigration benefits in the future), and are eligible to receive Social Security, retirement, and disability benefits, as well as, in some states, driver's licenses and unemployment insurance. Id.

Rian alleges that, on August 7, 2019, "USCIS abruptly and without notice stopped its consideration of deferred action for non-military requestors," "did not publicly announce its change in policy," and failed to "provide a reason for the change." Id. ¶¶ 48-50.

Rian filed this action on September 3, 2019.

### B. Subsequent Action as Asserted in Defendants' Motion

Defendants assert that "[o]n September 18, 2019, then-Acting Secretary of Homeland Security Kevin McAleenan issued a memorandum to USCIS directing it to resume its consideration of non-military deferred action requests on a discretionary, case-by-case basis, except as otherwise required by an applicable statute, regulation, or court order. " Defs.' Mem. in

Supp. 4 [#22] (internal quotations and citation omitted). Defendants state further that "[p]ursuant to the September 18, 2019 memorandum, USCIS immediately reinstated the same process that was in effect before August 7, 2019…" Id. at 5.

III. Standard of Review

A motion to dismiss for mootness is a challenge to the court's jurisdiction and the court, thus, considers it brought pursuant to Fed. R. Civ. P. 12(b)(1). See Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003) (evaluating mootness as an issue of subject matter jurisdiction).

Where a defendant makes a "factual challenge," that is, a challenge to the "accuracy" of the purported basis for subject-matter jurisdiction as opposed to the "sufficiency" of the jurisdictional facts asserted, the court may engage in "differential factfinding." Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). Thus:

> the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties…In conducting this inquiry, the court enjoys broad authority to order discovery,[2] consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.

---

[2] On a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a "plaintiff is entitled to additional discovery if he can show: '(i) good cause for his inability to have discovered or marshalled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to defeat the pending' motion." Strahan v. Roughead, 910 F. Supp. 2d 358, 364 (D. Mass. 2012) (quoting Rivera-Torres v. Rey-Hernández, 502 F.3d 7, 10 (1st Cir. 2007)). Plaintiff here contends that it "reasonably believes that Defendants have only pretextually rescinded their illegitimate policy and reasonably believes that discovery would support this fact." Plaintiff's Opposition to Defendants' Motion to Dismiss 9 n.6 [#30]. Defendant argues that Plaintiff has not "satisfied the standard required for additional discovery." Defendants' Reply 3 [#31]. Because the court finds that, even if Defendants have fully reinstated the non-military deferred action program, the action has not been rendered moot pursuant to the voluntary cessation doctrine, it does not reach the question of additional discovery.

Id. (internal citations omitted). Where genuinely disputed jurisdictional facts "are inextricably intertwined with the merits of the case…the court may defer resolution of the jurisdictional issue until the time of trial." Id. at 363 n.3.

IV. Analysis

Defendants contend that "[t]his case is moot because the agency action it challenges has been reversed." Memorandum in Support of Motion to Dismiss ("Defs.' Mem. in Supp.") 6 [#22]. Plaintiffs deny that Defendants have "actually establish[ed] that they have restored their deferred-action program as it previously existed." Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n") 9 [#30]. Moreover, even if they had so established, Plaintiffs argue that the "voluntary cessation" exception to the mootness doctrine applies because Defendants have not shown that the challenged action "could not reasonably be expected to recur." Id. at 5 (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)).

A case is moot where it is "impossible for a court to grant any effectual relief whatever to the prevailing party." Chafin v. Chafin, 568 U.S. 165, 172 (2013). The mootness review is grounded in "[t]he case or controversy requirement [and] ensures that courts do not render advisory opinions." Overseas Military Sales Corp. v. Giralt-Armada, 503 F.3d 12, 16–17 (1st Cir. 2007). "But as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps., 466 U.S. 435, 442 (1984). Moreover, "[t]he burden of establishing mootness rests squarely on the party raising it, and '[t]he burden is a heavy one.'" Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).

A defendant's voluntary cessation of a challenged practice usually does not deprive a federal court of its power to determine the legality of the practice. Knox v. Serv. Employees Int'l Union, Local 1000, 567 U.S. 298, 307 (2012) (citing City of Mesquite v. Aladdin's Castle, Inc., 455 U.S.283, 289 (1982)). "If it did, the courts would be compelled to leave the defendant free to return to his old ways." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000). Rather, for a case to be rendered moot, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Laidlaw, 528 U.S. at 190).

Defendants argue that the voluntary cessation doctrine does not apply because "(1) it is generally inapplicable to government entities, which are afforded a presumption of good faith, (2) it does not apply where the change occurred for reasons unrelated to the litigation, and (3) Plaintiff cannot establish a reasonable expectation of recurrence of the challenged conduct."[3] Defs.' Mem. in Supp. 10 [#22]; see also Defs.' Reply 5-7 [#31].

---

[3] Defendants also argue, under the umbrella of mootness, that Plaintiff lacks standing because the "opportunity" to apply for deferred action on behalf of its clients "has been restored." Defs.' Mem. in Supp. 7 [#22]. Defendants here conflate the doctrines of standing and mootness. Standing is assessed as of the "commencement of the litigation." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000). The Supreme Court explains: "[I]n Lyons,…we held that a plaintiff lacked initial standing to seek an injunction against the enforcement of a police chokehold policy because he could not credibly allege that he faced a realistic threat arising from the policy. Elsewhere in the opinion, however, we noted that a citywide moratorium on police chokeholds—an action that surely diminished the already slim likelihood that any particular individual would be choked by police—would not have mooted an otherwise valid claim for injunctive relief, because the moratorium by its terms was not permanent. The plain lesson of these cases is that there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." Id. (internal citations omitted).

A.  <u>The Voluntary Cessation Doctrine Applies to USCIS</u>

Defendants contend that the voluntary cessation doctrine should not be applied to the actions of an executive branch agency because "[c]ourts have routinely recognized that the coordinate branches of government are presumed to act in good faith when altering their conduct or changing policies or laws." Defs.' Mem. in Supp. 13 [#22]; <u>see also</u> Defs.' Reply 5 [#31]. While true that "despite <u>Laidlaw</u>'s heavy burden" on the party asserting mootness to show that the challenged conduct cannot reasonably be expected to start up again, "some courts have expressly treated governmental officials' voluntary conduct with more solicitude than that of private actors," <u>Rio Grande Silvery Minnow v. Bureau of Reclamation</u>, 601 F.3d 1096, 1116 n.15 (10th Cir. 2010) (internal quotation omitted), neither the First Circuit nor the Supreme Court has endorsed such additional solicitude where the government actor is an executive agency. <u>See</u> <u>Am. Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops</u>, 705 F.3d 44, 56 n.10 (1st Cir. 2013) (declining to "join the line of cases holding that when it is a government defendant which has altered the complained of regulatory scheme, the voluntary cessation doctrine has less application unless there is a clear declaration of intention to re-engage"); <u>Town of Portsmouth v. Lewis</u>, 813 F.3d 54, 59 (1st Cir. 2016) (noting that the First Circuit generally "presume[s] that a state legislature enacts laws in good faith" because, while the Supreme Court does "not hesitate[] to invoke the voluntary cessation exception when considering the conduct of private, municipal, and administrative defendants it has not applied the exception to state legislatures. Rather, it has consistently and summarily held that a new state statute moots a case"); <u>Conservation Law Found. v. Evans</u>, 360 F.3d 21, 26-27 (1st Cir. 2004) (applying the "heavy burden" of <u>Laidlaw</u> to the National Marine Fisheries Service, a sub-agency

7

within the U.S. Department of Commerce). The court sees no reason to change the applicable standard here.

### B. The Change is Not Clearly Unrelated to this Litigation

Defendants contend that "[t]he fact that the Acting Secretary's decision occurred two weeks after Plaintiff filed suit is merely correlation not causation," and that "where the voluntary cessation occurred for reasons unrelated to the litigation," the voluntary cessation exception ordinarily does not apply. Defs.' Mem. in Supp. 14 [#22] (quoting Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016)); see also Defs.' Reply 6 [#31]. "Circuit courts have routinely held that the voluntary cessation exception is not invoked when the challenged conduct ends because of an event that was scheduled before the initiation of the litigation, and is not brought about or hastened by any action of the defendant." Am. Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 55 (1st Cir. 2013).

Here, however, Defendants do not argue that the reinstatement of the deferred action program was scheduled before the initiation of the litigation or that it was not brought about or hastened by any action on their part. Instead, they argue that it was reinstated "for governmental reasons after conferring with the relevant DHS components" and "in light of substantial congressional scrutiny." Defs.' Mem. in Supp. 14 [#22] (internal quotations omitted). That Defendants may have ceased the deferred action for internal reasons, or because Defendants faced Congressional scrutiny does not mean that they will not resume the action if the lawsuit is declared moot or Congress looks away. Moreover, "[t]he existence of an independent reason" for Defendants' action "is insufficient to demonstrate that the decision…was unrelated to the litigation" because otherwise "a defendant could defeat the voluntary cessation exception and

evade judicial review merely by advancing a credible cover story."[4] KG Urban Enterprises, LLC v. Patrick, 969 F. Supp. 2d 52, 57 (D. Mass. 2013) (Gorton, J.). Where, as here, Defendants have not demonstrated that their voluntary cessation is unrelated to the litigation,[5] the action is not rendered moot.

### C. There is a Reasonable Expectation of Recurrence

Finally, Defendants contend that the voluntary cessation doctrine does not apply in this case because "[t]here are no grounds upon which Plaintiff can show" a reasonable expectation that the challenged conduct will recur. Defs.' Mem. in Supp. 14-15 [#22]; see also Defs.' Reply 6-7 [#31]. The Supreme Court has held, however, that, where defendants argue that a case has been mooted by the cessation of challenged conduct, it is the defendants' "formidable burden" to demonstrate "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013). They have not met that burden here.

In support of their contention that there is no reasonable expectation that USCIS will again terminate the deferred action program, Defendants point to Defendant Cuccinelli's October 30, 2019 testimony to Congress that he does not "expect to see any change [to the reinstated process] regardless of who the Secretary is." Defs.' Mem. in Supp. 15 [#22] (quoting Hearing Transcript, House Oversight and Reform Committee, Civil Rights and Civil Liberties

---

[4] Defendants, citing a 9th Circuit case from 1998, assert that it is Plaintiff's burden "to show that the voluntary cessation occurred 'because of the litigation.'" Defs.' Mem. in Supp. 14 [#22] (quoting Sze v. INS, 153 F.3d 1005, 1008 (9th Cir. 1998)). As noted above, "[t]he burden of establishing mootness rests squarely on the party raising it, and '[t]he burden is a heavy one.'" Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).

[5] Defendants contend that "nothing suggests that the Department's change of course flowed from the mere filing of this lawsuit." Defs.' Reply 6 [#31]. This misplaces the burden.

9

Subcommittee, Hearing on the Administration's Decision to Deport Critically Ill Children and Their Families (Oct. 30, 2019) (excerpts) 53 [#20-2]). However, at that same hearing, Defendant Cuccinelli stated that, going forward, he cannot say "what [he] would advise some other secretary to do or what they would do or even if [he] were the secretary" what he, himself, would do. Id.  He also explained that he believes "utilizing [the deferred action] authority…wasn't appropriate for USCIS's mission." Id. at 32.

In Knox v. Service Employees International Union, Local 1000, the Supreme Court held that a class action suit challenging a union's imposition of certain fees was not rendered moot when, after the Court granted certiorari, the union offered to refund the fees to all class members because, where "the union continue[d] to defend the legality of the [fees], it is not clear why the union would necessarily refrain from collecting similar fees in the future." 567 U.S. 298, 308 (2012). Likewise, here, where Defendants maintain that the termination of deferred action was lawful and proper, and offer only what Defendant Cuccinelli "expects" may occur, they have not met their "formidable burden" to clearly demonstrate that the challenged action could not reasonably be expected to recur. See Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013).

Thus, even assuming Defendants have restored the non-military deferred action program as it previously existed, their voluntary cessation of the challenged conduct does not moot the case. As such, the court does not here reach the factual dispute surrounding the extent of the program's reinstatement.

V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [#20] is DENIED insofar as it contends that this action should be dismissed for mootness and Plaintiff's Motion for Leave to File Supplemental Record [#35] is DENIED without prejudice. Counsel shall meet and confer

10

and submit a joint status report within seven days as to whether they request supplemental briefing to address <u>Department of Homeland Security v. Regents of the University of California</u>, 140 S.Ct. 1891 (2020), and if so, shall include a proposed briefing schedule.

    IT IS SO ORDERED.

Date: November 2, 2020                                  /s/ Indira Talwani
                                                                                         United States District Judge